## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHARLES A. FREEMAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:19-cv-01784PX |
| THERESA BEVERLY, *et al.*, | * | |
| Defendants. | * | |

***

## <u>MEMORANDUM OPINION</u>

Pending in this employment discrimination case is a motion to dismiss filed by Defendants Maryland State Department of Assessment and Taxation ("SDAT") and SDAT Associate Director Katherine Holmes (ECF No. 25-1) and a motion to dismiss filed by Defendant Equal Employment Opportunity Commission ("EEOC") Investigator Theresa Beverly (ECF No. 26-1). The motions are fully briefed, and no hearing is necessary. Loc. R. 105.6. For the reasons that follow, the Court grants both motions.

### I.   Background

In 2007, Plaintiff Charles A. Freeman, who is Black and was 60 years old at the time, applied for a position with Maryland SDAT as an assessor for Prince George's County. ECF No. 24 ¶¶ 4–6; ECF No. 24-2. Freeman possessed three college degrees and robust work experience. *See* ECF No. 24-8. SDAT did not hire him.

Shortly after his rejection, Freeman requested information from the Governor's Office and SDAT about the selected candidate so as to "uncover evidence that would prove his allegations about age, race discrimination[.]" ECF No. 24 ¶¶ 4–6. SDAT did not provide him the information. ECF No. 24 ¶ 4.

Approximately ten years later,[1] Freeman again applied for the position "Assessor I Real Property" with SDAT for Montgomery County. ECF No. 24-2; ECF No. 24 ¶ 5. Freeman was one of fifty-five candidates who applied for a single position. ECF No. 24 ¶ 5; ECF No. 24-2. On July 21, 2017, SDAT interviewed Freeman. ECF No. 24-2. The interview included a written test, which in part assessed the applicant's math and computer skills. ECF No. 24-5; ECF No. 29-4; ECF No. 24 ¶ 7. SDAT selected another candidate, an Asian male whose age is not clear from the pleadings. ECF No. 24-2; ECF No. 24-4 at 3.

Freeman's non-selection again aroused his suspicions that he had been the victim of age and race discrimination. ECF No. 24 ¶¶ 8, 9. On November 9, 2017, Freeman filed with the EEOC a formal charge. *See* ECF No. 24 ¶ 1; ECF No. 24-2; ECF No. 24-4. On March 18, 2019, the EEOC issued to Freeman a "Dismissal and Notice of Rights," informing him that, after investigation, the EEOC declined to pursue the claim on his behalf and that he could file suit in federal or state court within 90 days. ECF No. 24-2. Freeman next requested the administrative file from the EEOC on May 6, 2019 and again on August 9, 2019, which he eventually received later that month. ECF No. 24-3 at 3–4; ECF No. 17.

On June 19, 2019, Freeman filed suit in this Court against SDAT, its Association Director Katherine Homes, and EEOC Investigator Theresa Beverly. *See* ECF No. 1. Freeman avers that SDAT discriminated against him on account of race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII")*,* and age, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA")*.* Freeman also brings claims against Beverly in her official capacity as EEOC investigator, alleging, effectively, that the EEOC too violated Title VII, the ADEA, the

---

[1] Freeman appears to have applied to similar positions in the intervening time period, with no success, but does not challenge those particular rejections. *See generally* ECF No. 24; ECF No. 29-4.

Administrative Procedures Act ("APA"), and the Fourteenth Amendment to the United States Constitution in its failure to investigate adequately and pursue his discrimination claims against SDAT.[2]

The EEOC now moves for this Court to dismiss Freeman's Amended Complaint for lack of subject matter jurisdiction because it enjoys sovereign immunity from suit.  ECF No. 26-1. All Defendants further contend that the claims fail as a matter of law.  *Id.*; ECF No. 25-1. The Court considers Defendants' arguments below.[3]

## II.     Standards of Review

### A.     Rule 12(b)(1)

Rule 12(b)(1) motions challenge a court's authority to hear the matter.  *See Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300–01 (4th Cir. 2009); *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.  *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).  If "a claim fails to allege facts upon which the court may base jurisdiction," the court must dismiss the action for lack of subject matter jurisdiction.  *Davis*, 367 F. Supp. 2d at 799.

In determining whether jurisdiction exists, "the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on

---

[2] The Court construes claims against Beverly as ones brought in her official capacity, which is tantamount to suit against the EEOC itself.  *See Portsmouth Redev. & Hous. Auth. v. Pierce*, 706 F.2d 471, 473 (4th Cir.1983) (a claim against a federal official for acts performed within his or her official capacity amounts to an action against the sovereign); *Hendy v. Bello*, 555 F. App'x 224, 226 (4th Cir. 2014) (Federal employees "acting within their authority generally also receive sovereign immunity.").  Official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent.…" *Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017).

[3] Freeman proceeds pro se and has filed a surreply that he urges this Court to consider.  Although Freeman has not moved for leave to file a surreply as the Court had instructed, ECF No. 33, the Court nonetheless considers the surreply out of an abundance of caution.  *See Fireman's Ins. Co. of Newark, New Jersey v. Herbert*, No. 4:04CV139, 2005 WL 3536091, at *2 (E.D. Va. Dec. 20, 2005) (Courts "do[] not expect a *pro se* litigant to perfectly comply with all procedural rules.").  The parties also agree that Attorney General Brian Frosh is not a named party, and so any motion to dismiss Frosh from the case is moot.  *See* ECF Nos. 31, 25.

the issue." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (internal marks and citation omitted).  Where, as here, the defendant contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based," the Court construes the facts alleged in the complaint as true and most favorably to the plaintiff.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

**B.**     **Rule 12(b)(6)**

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted).  A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,'" however, "rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and viewed in the light most favorable to him.  *Twombly*, 550 U.S. at 555.  The Court may also consider documents attached to the motion to dismiss when "integral to and explicitly relied on in the complaint, and when the [opposing parties] do not challenge the document[s'] authenticity." *Zak v. Chelsea Therapeutics, Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)) (internal quotation marks omitted).  However, "[f]actual allegations must be enough to raise a

right to relief above a speculative level." *Twombly*, 550 U.S. at 555.  "[C]onclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'"  *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "'[N]aked assertions of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'"  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). Although pro se pleadings are construed liberally to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

### III.    Analysis

### A.    The EEOC

The EEOC primarily contends that dismissal is warranted on grounds of sovereign immunity.  *See* ECF No. 26-1.  Sovereign immunity protects the United States and its agencies from suit absent waiver.  *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005); *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").  Congress may expressly waive sovereign immunity for certain suits.  *See Kerns v. United States*, 585 F.3d 187, 193–94 (4th Cir. 2009).  However, waiver must be "strictly construed" in favor of the United States.  *Lane v. Pena*, 518 U.S. 187, 192 (1996).  The EEOC, as a federal agency, enjoys "a presumption of immunity from the present lawsuit."  *Robinson v. United States Dep't of Educ.*, 917 F.3d 799, 801 (4th Cir. 2019).

The claims against the EEOC challenge the sufficiency of the agency's investigation and dismissal of the formal charge. *See* ECF No. 24.[4]  However, none of the statutory provisions on which Freeman relies waive sovereign immunity as to the EEOC.

Title VII, by its plain terms, allows three specifically defined suits: (1) actions brought by the EEOC or an aggrieved person against the non-federal respondent named in a charge (42 U.S.C. § 2000e-5(f)(1) & (3)); (2) actions brought by the EEOC or the Attorney General against a non-federal respondent alleging a pattern or practice of discrimination (§ 2000e-6(b)); and (3) actions brought by an aggrieved person against the federal agency that discriminated against him as an employee or applicant for employment (§ 2000e-16(c)).  The statute, however, "does not provide for preliminary review of the Commission's determination of reasonable cause." *Georator Corp. v. Equal Employment Opportunity Comm'n*, 592 F.2d 765, 767 (4th Cir. 1979). Instead, a plaintiff may seek de novo review of the claims he put before the EEOC by way of filing suit in this Court. *Id.; see also O'Briant v. Rhodes*, No. RDB-18-855, 2018 WL 1582545, at *2 (D. Md. Mar. 30, 2018) ("Title VII of the Civil Rights Act of 1964 does not confer federal jurisdiction over suits against the EEOC when the plaintiff alleges discrimination by third parties").

Freeman attempts to challenge the sufficiency of the EEOC's administrative process.  He avers that the EEOC investigation and decision to reject his claim gives rise to its own Title VII claim.  But clearly Title VII does not allow suit on this basis. *See Jaffer v. Nat'l Caucus & Ctr. on Black Aged, Inc.*, 296 F. Supp. 2d 639, 642–43 (M.D.N.C. 2003) (plaintiff could not assert

---

[4] Freeman adds, in his response and surreply, that he was denied due process because the EEOC failed to provide him a copy of the administrative record.  *See* ECF No. 30; ECF No. 34-3.  The EEOC has provided the administrative record, however, and so any claim based upon such failure has been mooted.  *See* ECF No. 17.  The Amended Complaint in fact references the administrative record and includes relevant portions as attachments.  *See* ECF No. 24.

claims under Title VII against EEOC or its individual employees because he was not suing EEOC as an aggrieved employee, but merely sought redress for her dissatisfaction with the agency's treatment of her EEO charge). Thus, nothing in Title VII may be construed as a waiver of the EEOC's immunity from suit. A similar conclusion is reached as to the ADEA, which permits direct suit against a federal agency only if the agency itself discriminates based on age. *See* 29 U.S.C. § 633(a).

The APA claim, which the Court reads liberally into the Amended Complaint, fares no better. Section 704 of the APA allows judicial review of an agency action only if the APA expressly authorizes suit or if the review concerns a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *Georator Corp.*, 592 F.2d at 767. Neither precondition is satisfied here.

The APA does not authorize such direct suit against the EEOC. Further, the EEOC's decision is not a final agency action. This is so because an employee is free to file his discrimination claims against the employer in state or federal court. In that suit, discrimination claims are reviewed de novo, and thus the EEOC's investigation and enforcement decisions visit no prejudice on the rights of the charging party. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 796–99 (1973). Consequently, the EEOC's determination is not a "final" agency decision subject to judicial review. *Georator Corp.*, 592 F.2d at 768 ("No such finality exists with respect to the EEOC's determination of reasonable cause. Standing alone, it is lifeless, and can fix no obligation nor impose any liability on the plaintiff."). Thus, the APA does not waive the EEOC's immunity from suit.

Freeman also appears to raise a Fourteenth Amendment due process claim based on the EEOC's denial of his requested relief. This claim too fails as a matter of law. "Because an

EEOC determination is appealable to the U.S. District Court, [and] a plaintiff whose claim the EEOC denied still has a vital federal remedy[,]" due process does not furnish a basis for jurisdiction based on allegations that the EEOC improperly investigated and dismissed a charge. *O'Briant*, 2018 WL 1582545, at *2; *see also Georator Corp.*, 592 F.2d at 769 ("When the preliminary determination is without legal effect in and of itself, due process will be satisfied if there is an opportunity to be heard before any final order of the agency becomes effective."). Thus, "an EEOC denial cannot amount to a deprivation of due process, and a complaint characterized as such fails to state a claim." *O'Briant*, 2018 WL 1582545, at *2.

In sum, the Court concludes that each of Freeman's claims against the EEOC are foreclosed. The motion to dismiss is granted as to the EEOC with prejudice.

### B.       Claims against Holmes and SDAT

Freeman alleges that Holmes and SDAT failed to hire him because of his age and race, and retaliated against him because he had previously requested information about his non-selection in 2007. ECF No. 24. Holmes argues that dismissal is warranted because the Complaint does not aver that she played any role in Freeman's non-selection, and alternatively that she enjoys qualified immunity. ECF No. 25-1 at 4–5. SDAT argues for dismissal of Freeman's ADEA claim on sovereign immunity grounds. ECF No. 25-1 at 5. Both defendants also argue that the Amended Complaint fails to state a claim. Because the Court agrees that the facts as alleged fail to make plausible that Freeman was the victim of discrimination or retaliation, the Court dismisses the claims on that basis alone.

### 1.       Freeman's Non-Selection Claims

Under Title VII, it is unlawful for a state employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).  To state a discriminatory non-selection claim, the plaintiff must allege sufficient facts to make plausible that: (1) he is a member of a protected group; (2) he applied for a specific position for which he was qualified and (3) his non-selection gives rise to an inference of discrimination.  *See Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004); *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001).  In short, Freeman must allege that Defendants "failed or refused to hire [him] *because of* [his] race."  *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (citations, quotation marks, and alterations omitted) (emphasis in original).

Defendants do not contest that Freeman is a member of a protected class or that he applied for a position at SDAT for which he was qualified.  Rather, they argue that Freeman did not allege facts from which one could infer racial discrimination.  The Court agrees.  Construing the Amended Complaint most favorably to Freeman, no facts support that his non-selection was based on his race.  At most, Freeman alleges that that the "higher echelon managers" "creat[ed] barriers to prevent my employment because of . . . race[,]" in that their tests focused on race. ECF No. 24 ¶¶ 4, 5.[5]  However, the Amended Complaint provides nothing to support the bald conclusion that any such tests were "based on race."  Put differently, simply because Freeman is a member of a protected class and was not hired, alone, cannot sustain a discrimination claim. *See McCleary-Evans*, 780 F.3d at 586 (allegation of general bias in non-selection claim "simply too conclusory").

---

[5] Freeman also asserts, throughout his Amended Complaint, that Defendants do not provide applicants with a grievance process.  *See, e.g.*, ECF No. 24 ¶ 8.  Freeman does not explain, and the Court cannot discern, how the lack of a grievance process played a role in Defendants' decision not to hire him.  ECF No. 24 ¶ 10.

The Court recognizes that SDAT hired an Asian man—also a member of a protected class —who is a different race than Freeman.  ECF No. 24-4 at 3.  Accordingly, Freeman could contend that SDAT's hiring outside his protected group gives rise to an inference of discrimination.  *See Langerman v. Thompson,* 155 F.Supp.2d 490, 495 (D. Md. 2001); *see also Miles v. Dell, Inc.,* 429 F.3d 480, 488 (4th Cir. 2005) ("[A] plaintiff must ordinarily show that she was [not selected in favor of someone] outside her protected class because, when someone within her protected class is hired . . . that fact ordinarily gives rise to an inference that the defendant did not [discriminate against plaintiff on the basis] of her protected status.").  The Fourth Circuit, however, has found that a claim cannot survive dismissal if the inference of discrimination rests solely on the fact that someone outside the plaintiff's protected class was selected.  *Cf. McCleary-Evans*, 780 F.3d at 586 (finding that plaintiff's allegation that decisionmakers were discriminatory because two non-Black candidates were selected to fill the positions instead of her was speculative and while the fact was "*consistent* with discrimination, it [did] not alone support a *reasonable inference* that the decisionmakers were motivated by bias") (emphasis in original).  This is because permitting a Title VII claim to proceed on such a threadbare allegation cannot "be squared with the Supreme Court's command that a complaint must allege 'more than a sheer possibility that a defendant has acted unlawfully.'"  *Id.* at 588 (citing *Iqbal,* 556 U.S. at 678).  Moreover, in light of Freeman having already amended his Complaint once, and this Court having considered his surreply, no further amendment would save the claim.  Thus, the Court dismisses the Title VII allegation with prejudice.

The Court turns next to Freeman's ADEA claim.  The ADEA prohibits employers from discriminating against current or prospective employees based on age.  29 U.S.C. § 623(a).  As to claims against a state agency, the Amended Complaint must aver facts to make plausible that

(1) Freeman was at least 40 years old; (2) he was qualified for the position he sought; (3) he was rejected despite his qualifications; and (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff, whether within or outside the class protected by the ADEA. *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006). The applicable ADEA's protections do not permit "a mixed-motives age discrimination claim." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009). Instead, Plaintiff must eventually "establish that age was the 'but-for' cause of the employer's adverse action." *Id.* at 177.

As with his Title VII claim, no facts support that Freeman's rejection was due to his age. The Amended Complaint avers that the test questions about computer skills acted as an impermissible proxy for age. *See* ECF No. 24 ¶ 7 ("Another important reason why the test was illegal was because it mainly targeted only one aspect of the qualification of the job which was computer skills and that was the same as targeting individuals because of age which I argue is tantamount to age discrimination."); ECF No. 24-5; ECF No. 29-4. But not even Freeman can deny that computer skills are relevant to the qualifications for a tax assessor job. ECF No. 24 ¶ 7. Because no facts support the inference that Freeman was rejected because of his age, the Court must dismiss this claim.

### 2. Retaliation

The Court lastly turns to the Title VII and ADEA retaliation claims. As to these claims, Freeman must plausibly aver that Defendants took an adverse action against him on account of his engagement in protected activity. *See Booth v. Cty. Exec.*, 186 F. Supp. 3d 479, 487 (D. Md. 2016); *Stoyanov v. Winter*, No. RDB-05-1567, 2006 WL 5838450, at *11 (D. Md. July 25, 2006), *aff'd*, 266 F. App'x 294 (4th Cir. 2008). Defendants do not dispute that Freeman's 2007 request to SDAT for "information about the successful candidate in the very first interview" to

unearth "evidence that would prove his allegations about age, race discrimination" constitutes protected activity, and that SDAT's failure to hire him is as an adverse action. ECF No. 24 ¶¶ 1, 5, 6; ECF No. 29 at 6. However, nothing in the Amended Complaint, construed most charitably, supports that he was not selected in 2017 because he sought further information about his non-selection in 2007.

For instance, no facts make plausible that the 2017 decisionmakers knew of Freeman's earlier discovery request. *Cf. Thurston v. Am. Press, LLC*, 497 F. Supp. 2d 778, 783 (W.D. Va. 2007) (explaining relevance of same decisionmaker in failure-to-hire retaliation claims). Broad allegations that "higher echelon managers" were working together, *see, e.g.*, ECF No. 24 ¶ 6, do not "raise the right to relief above a speculative level." *Twombly*, 550 U.S. at 555. Such speculative allegations alone are enough to warrant dismissal. The Court is further convinced that the pleadings are insufficient because the respective officers involved in both non-selection events appear wholly separate. *See* ECF No. 24 ¶¶ 4–7 (Prince George's County (2007) and Montgomery County (2017)). *Cf. Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) ("[A] plaintiff in a retaliation case must show, at the very least, that the defendant was aware of her engaging in protected activity."). The ten-year gap renders even more implausible any inference that his 2007 request contributed to his 2017 non-selection. This is because, ordinarily, there must exist "some degree of temporal proximity to suggest a causal connection." *Id.* A "lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse action negates any inference that a causal connection exists between the two." *Id.* (citation and alterations omitted); *see also Clarke v. DynCorp Int'l LLC*, 962 F.Supp.2d 781, 790 (D. Md. 2013) ("[A] lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to

weaken significantly the inference of causation.'") (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)).  Thus, no facts support that those who did not hire Freeman also knew he had engaged in such protected activity ten years before.  Nor could amendment of the pleadings cure these fundamental defects. The claim must be dismissed with prejudice.

### IV.   Conclusion

For the foregoing reasons, the Court grants Defendants' motions to dismiss.  ECF No. 25-1; ECF No. 26-1.  A separate Order follows.


_____5/27/2020_____          _____/S/_____
Date                                      Paula Xinis
                                          United States District Judge